THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| JESUS ORTIZ, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CAUSE NO. EP-24-CV-184-KC |
| § | |
| EL PASO COMMUNITY COLLEGE § | |
| DISTRICT, § | |
| § | |
| Defendant. § | |

## ORDER

On this day, the Court considered Defendant El Paso Community College District's Motion to Enforce Settlement Agreement ("Motion"), ECF No. 12. For the following reasons, the Motion is **DENIED**.

**I.      BACKGROUND**

On September 3, 2024, Plaintiff's counsel, Raymond Martinez, sent Defendant's counsel an email that stated, in pertinent part: "What I was asking [is] if we dismiss then if no fees. [I]'m talking about a dismissal with prejudice. Let me know." Mot. Ex. B, ECF No. 12-1.

One of Defendant's counsel, Rosemary M. Marin, responded on September 8: "My client has agreed to waive its court costs, including fees, in exchange for Plaintiff's dismissal of this lawsuit with prejudice (and possible state court wage and hour claims based on the same operative facts). [Co-counsel] will send you the proposed stipulation." *Id*. Ex. C, ECF No. 12-1. Martinez did not respond, and Marin followed up on October 2, attaching the "proposed settlement documents," a release of claims and a stipulation for dismissal with prejudice of this lawsuit. *Id*. Ex. D, ECF No. 12-1. Marin added: "Please let me know if you have any questions or concerns. Otherwise, please return the executed documents at your earliest convenience." *Id*.

In subsequent emails, Marin stated Defendant's position that "[t]he emails between us show we had a deal on this settlement, which was proposed by you." Resp. Ex. C, ECF No. 14-3. Martinez responded that "[t]here was no agreement for settlement. . . . you sent a settlement agreement for some reason which we have not signed or authorized. I will be more careful in my communications with you in the future." *Id.* To date, Plaintiff has not executed these settlement documents, prompting Defendant to file the present Motion, arguing that the initial exchange of emails constituted a binding contract and requesting the Court to enforce it. *See generally* Mot. Plaintiff filed a Response, ECF No. 14, contending that no settlement agreement exists.

## II.  ANALYSIS

"A district court may exercise its discretion to enforce a settlement agreement where one party to a suit has initially agreed to a settlement but later refused to execute a formal agreement reciting the terms of the settlement." *Omoloh v. Bank of America, N.A.*, No. 4:17-cv-160, 2017 WL 2616006, at *3 (N.D. Tex. May 16, 2017) (citing *Weaver v. World Fin. Corp. of Texas*, No. 09-cv-1124, 2010 WL 1904561, at *1 (N.D. Tex. May 12, 2010)), *adopted*, 2017 WL 2599194 (June 15, 2017).

In federal court, whether a settlement agreement is enforceable is analyzed under either state or federal law, depending on the source of subject matter jurisdiction. *Id.* "A court exercising diversity jurisdiction applies the law of the state in which the settlement agreement was negotiated and is to be performed." *Id.* (citing *Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987)). But a court exercising federal question jurisdiction applies federal law. *Id.* (citing *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984)).

Defendant asserts—without explanation—that the Court has diversity jurisdiction over Plaintiff's claims and that Texas law thus applies. Mot. 3. But Plaintiff's only claim is for

violations of the Fair Labor Standards Act, a federal statute *See* Compl. ¶¶ 14–23, ECF No. 1. Nowhere in the Complaint does Plaintiff raise a state law claim or invoke diversity jurisdiction. *See generally id.*

Therefore, the Court applies federal law to determine whether to enforce the settlement agreement. *Mid-S.*, 733 F.2d at 389 ("Questions regarding the enforceability or validity of such agreements are determined by federal law—at least where the substantive rights and liabilities of the parties derived from federal law." (collecting cases)).  In so doing, the Court marks a distinction with little difference.

"Under federal law, a settlement agreement is considered a contract." *Henry v. BG of Dallas Corp.*, No. 13-cv-2060, 2014 WL 10919570, at *1 (N.D. Tex. Oct. 8, 2014) (citing *Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992)).  And "federal contract law is largely indistinguishable from general contract principles under state common law."  *In re Deepwater Horizon*, 786 F.3d 344, 354 (5th Cir. 2015) (citations omitted). Accordingly, in determining whether to enforce a settlement agreement, a court exercising federal question jurisdiction may rely on both federal and state contract law precedents. *Id.* at 354–55.

General principles of contract law define a contract as a bargain involving mutual assent to the exchange and consideration. *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 446 (N.D. Tex. 2019) (citing Restatement (Second) of Contracts § 17 (1981)). Thus, to establish the existence of a valid contract, a party must demonstrate (1) an offer; (2) acceptance of that offer; and (3) consideration.  *Id.*; *see e.g.*, *Said v. EAN Holdings, LLC*, No. 24-cv-728, 2024 WL 4557349, at *6 (N.D. Tex. Oct. 22, 2024) (citation omitted).

The question here is whether the parties formed a valid contract under which Plaintiff would dismiss the case with prejudice in exchange for Defendant waiving court costs and attorney fees. *See generally* Mot. As the party seeking to enforce the agreement, Defendant bears the burden of proving that a valid and enforceable settlement exists. *Cavalier v. Dep't of Pub Safety & Corr.*, No. 21-cv-656, 2023 WL 3594155 (M.D. La. Feb. 24, 2023) (citing *Faris v. Williams WPC-I, Inc.*, 332 F.3d 316, 322 (5th Cir. 2003)), *adopted*, 2023 WL 3589671 (May 22, 2023).

The Court assumes, without deciding, that Defendant has demonstrated consideration—i.e., "mutuality of obligation," *Avialae S De RL De CV v. Cummins Inc.*, 472 F. Supp. 3d 340, 348 (W.D. Tex. 2020) (citation omitted), *aff'd*, No. 23-50376, 2024 WL 2461947 (5th Cir. Apr. 4, 2024)—by showing that dismissal was to be exchanged for the waiver of fees and costs. The issue is thus only whether Defendant has established an offer and its acceptance.

An "offer 'must be reasonably definite in its terms and must sufficiently cover the essentials of the proposed transaction so that, with an expression of assent, there will be a completed and definite agreement on all essential details.'" *Kamel v. Ave. Insights & Analytics LLC*, No. 18-cv-422, 2020 WL 4679574, at *3 (E.D. Tex. May 5, 2020) (quoting *Pasture Renovators, L.L.C. v. Lawson Cattle & Equip., Inc.*, 480 F. Supp. 2d 890, 893 (W.D. Tex. 2006)), *adopted*, 2020 WL 5939052 (Oct. 7, 2020). "An offer is judged by the parties' overt acts and words, not by the subjective or secret intent of the offeror." *In re Deepwater Horizon*, 786 F.3d at 354. And "an acceptance must be identical with the offer to make a binding contract." *Trinity Indus. Leasing Co. v. Hexicon Inc.*, No. 17-cv-1936, 2020 WL 13468885, at *8 (N.D. Tex. Mar. 30, 2020) (citation omitted). Thus, "[a] purported acceptance that changes or qualifies

an offer's material terms constitutes a rejection and a counteroffer rather than an acceptance." *Id.* (citation omitted).

Defendant contends that Martinez made an offer when he emailed: "What I was asking [is] if we dismiss then if no fees.  I'm talking about a dismissal with prejudice.  Let me know." Mot. 5.  This offer is neither "reasonably definite," nor does it "sufficiently cover the essentials of the proposed transaction." *Kamel*, 2020 WL 4679574.  The decisions of other courts in this Circuit are illustrative.  For instance, in *Cruit v. MTGLQ Inv., L.P.*, the defendant's counsel emailed the plaintiff's counsel, stating "that he 'thinks' he had [the defendant's] approval for a settlement," providing bullet points of proposed terms, and advising that he would file a notice of settlement if the plaintiff found the terms acceptable.  No. 17-cv-483, 2018 WL 4610594, at *3 (E.D. Tex. Sept. 26, 2018).  The plaintiff's counsel responded that the terms "looked fine." *Id.* at *2 (cleaned up).  But the parties eventually disagreed as to certain details, and the defendant moved to enforce a settlement, arguing that the email exchange constituted a binding settlement agreement. *Id.*  But a magistrate judge found the email terms "too indefinite to form a binding contract," and the district court agreed, holding that the exchange may have reflected negotiations rather than a finalized agreement. *Id.; see also Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 77 S.W.3d 253, 263 (Tex. 2002) (noting that settlement offers must be clearly communicated given the "fluid and complex" nature of negotiations and their inherent "tactical considerations").  And in *Coppock v. Doug's Corner, Inc.*, the court found no valid settlement offer partly because the plaintiff's counsel's email included conditional language: "*If* the [third-party defendant's] policy literally has a $100,000 aggregate limit and they only have $80k of limits remaining, then we'll accept the $80,000."  No. 21-cv-43, 2023 WL 11947178, at *2 (E.D. Tex. May 17, 2023) (emphasis added).

Here, Plaintiff's alleged offer is a single sentence, with much less detail than in *Cruit*, and with conditional language, as in *Coppock*. Mot. Ex. B ("What I was asking [is] *if* we dismiss then *if* no fees."). Indeed, the most reasonable interpretation of this email is that Martinez was gauging Defendant's interest in settling on these terms—i.e., that he was negotiating rather than proposing a finalized agreement, *see Cruit*, 2018 WL 4610594, at *3.

Further, Marin's response to Martinez's email undermines Defendant's argument that it constituted a sufficiently definite offer. First, Marin responded that the dismissal should "possibl[y]" include any "state court wage and hour claims based on the same operative facts." Mot. Ex. C. Marin's suggestion to "possibl[y]" include a release of additional claims reinforces the conclusion that Martinez's email did not sufficiently address the essentials of the proposed transaction, such that an expression of assent would have resulted in a definite agreement on all key terms. *See Kamel*, 2020 WL 4679574, at *3 (citation omitted). So does Marin's follow-up email, attaching "proposed settlement documents," presumably containing the essential details that Martinez's email lacked. *Id.* Ex. D. Finally, even if Martinez's vague email were considered an offer, Marin's emails—suggesting the release of additional claims and attaching proposed settlement documents with additional details—changed or qualified Martinez's offer. At best, therefore, they constituted a rejection and a counteroffer, which Plaintiff had the opportunity to accept. *See Trinity Indus. Leasing Co.*, 2020 WL 13468885, at *8 ("A purported acceptance that changes or qualifies an offer's material terms constitutes a rejection and a counteroffer rather than an acceptance."). He did not. *See* Resp. Ex. C (Martinez responding, "There was no agreement for settlement.").

6

In sum, either Martinez's initial email was not sufficiently definite and complete to constitute an offer, or, if it was, Marin's subsequent email contained a rejection and a counteroffer. Either way, an essential element is missing and there is no contract for settlement.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Enforce Settlement Agreement, ECF No. 12, is **DENIED**.

**SO ORDERED.**

SIGNED this 6th day of January, 2025.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE